**Don PRIORI, individually and as Executor for the Estate of Lena Priori, Deceased, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE CO. OF AMERICA, Defendants.**

No. Civ.A.99–A–1245–N.

United States District Court, M.D. Alabama, Northern Division.

April 11, 2000.

Jackson G. Shores, Jr., Birmingham, AL, for Plaintiff.

M. Christian King, Melody L. Hurdle, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This case is before the court on a Motion for Summary Judgment filed by the Defendant, the Prudential Insurance Compa-

ny of America ("Prudential") on March 8, 2000 (Doc. # 9), and on a Motion to Strike Affidavit, filed by Prudential on April 5, 2000 (Doc. # 10).

The Plaintiff, Don Priori ("Priori") originally filed his Complaint in the Circuit Court of Bullock County, Alabama. The case was subsequently removed to this court on the basis of diversity jurisdiction. Priori has asked that the court determine the benefit due to him as the beneficiary of his mother's whole life insurance policy which was issued by Prudential.

For the reasons to be discussed, Prudential's Motion for Summary Judgment is due to be GRANTED.

### II. FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

Lena Priori was issued a whole life insurance policy with a face amount of $225 in 1948. The face amount of the policy was increased to $249 in 1980. The total amount of premiums paid by Lena Priori was $339.25.

Lena Priori died on September 29, 1996. The Plaintiff in this case, Priori, is Lena Priori's son and the beneficiary of her life insurance policy. After Lena Priori's death, Priori submitted a Request for Insurance Benefits to Prudential. Prudential issued a check for $1048.65 to Priori. Priori returned the check to Prudential contending that the check was "$344,000 or so too low." Defendant's Exhibit 5. Prudential subsequently mailed another check to Priori in the amount of $1048.65, which was returned to Prudential by Priori.

Priori has provided this court with a letter written by a person, who Priori apparently intends to offer as an expert, in which he states that Prudential owes Priori varying amounts of benefits under the

policy, ranging in amount from $231,999 to $525,165. *See* Plaintiff's Exhibit B to Ford Affidavit.

### III. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### IV. *DISCUSSION*

It is undisputed that Prudential tendered $1048.65 to Priori as the benefit to which Priori was entitled as the beneficiary of his mother's whole life insurance policy. Prudential's evidence is that the amount tendered consisted of the $249 face amount of the policy, $704.34 in annual dividends in the form of paid-up additional insurance, a $7.20 termination dividend, and $87.11 in death claim interest. *See* Defendant's Exhibit 1, Affidavit of Linda Osteen.

Priori argues that the amount of $1048.65 is insufficient as the benefit on his mother's life insurance policy. Priori relies on a letter in which varying amounts of the benefit purportedly due are advanced which range from $231,999 to $525,165. Priori is essentially making two arguments, one of which is based on an opinion as to the dividend calculations which should have been made under the policy, and the second of which is based on the idea of unjust enrichment.

As to his interpretation of the policy, Priori points out that the policy at issue provides as follows:

> While this policy continues in force other than as extended insurance or reduced paid-up insurance, the portion, if any, of the divisible surplus of the Company

accruing upon this Policy shall be determined annually by the Board of Directors, and will be credited to this policy as a dividend. Such dividend shall be in the form of a paid-up addition to the amount of insurance.

Plaintiff's Exhibit 1. Priori states that this provision is ambiguous and should be read to provide for much greater dividends than those which were paid to his mother under her policy. As evidence of this ambiguity, Priori points to Prudential's statement that the dividend declared on the policy in 1951 was 1.2%, which resulted in a paid-up addition of $2.70. Priori states that if $2.70 is the dividend, then that amount of money should have purchased a greater amount of life insurance to be added to the policy face value, and that the $2.70 cannot be both a dividend and the value of paid-up insurance to be purchased by that dividend.

Prudential has provided evidence which explains that under the policy the dividend is actually a dividend rate of 1.2% which, multiplied by the face amount, resulted in a paid-up addition of $2.70. *See* Defendant's Exhibit 1, Affidavit of Linda Osteen. The clear language of the policy is that the dividend would be paid in the form of a paid-up addition to insurance, not as a cash dividend which would then be used to buy paid-up insurance. The court does not, therefore, find an ambiguity in the provision pointed to by Priori.

In addition, although Priori contends that Prudential unfairly retained the cash generated by the policy without paying a cash dividend, the clear language of the policy provides that the dividend will be paid in the form of paid-up additions to insurance. *See* Plaintiff's Exhibit 1.

Priori has also provided an affidavit in an attempt to demonstrate that a larger benefit should have been paid under the policy. The affidavit is from Bill Ford, an associate of Priori's, who states that he has twenty-five years of experience in the insurance industry. Priori appears to be offering Ford as an expert in this case.

■ Prudential has moved to strike Ford's affidavit on various grounds, one ground being that Priori has not complied with this court's scheduling order requiring the disclosure of expert witnesses at least seventy-five days prior to the pretrial hearing in this case. *See* Uniform Scheduling Order, November 5, 1999, at page 3. Another judge of this court has previously granted summary judgment where the evidence sought to be relied upon by the plaintiff was given by an expert who had not been properly disclosed under the court's scheduling order. *See Robinson v. Ford Motor Company,* 967 F.Supp. 482 (M.D.Ala.1997), *aff'd without opinion,* 144 F.3d 56 (11th Cir.1998). This court agrees that Priori has not complied with the scheduling order so as to use Ford as an expert and that the affidavit is due to be stricken.

■ Even if the court were to consider Ford's affidavit, however, the court does not find that Priori has created genuine issues of fact for trial as to the benefit which should have been paid under the policy. Priori argues, relying on Ford's affidavit, that for the period of 1951 through 1996, the paid-up addition to his mother's insurance policy was a 317% increase in the face value of the policy, and an increase of 210% on her premium investment. Ford provides a chart which he says has been compiled from another source which shows the assets and surplus of Prudential's insurance lines. Priori states that during the time in which the policy was in force, Prudential's total assets grew from 7.854 billion dollars to 184.420 billion dollars which is an increase of 2348%, and that its surplus grew from .457 billion dollars to 13.485 billion dollars, an increase of 2957%. Priori apparently is arguing that the rate of increase in the

value of the policy should correspond to the rate of increase in Prudential's assets.

Prudential has responded that there is nothing in the insurance policy at issue which states that the insureds will profit at the same rate as the company. The court agrees that the clear language of the policy states that "the portion, if any, of the divisible surplus of the Company accruing upon this Policy shall be determined annually by the Board of Directors...." Plaintiff's Exhibit 1.

Ford also offers the opinion that the insurance policy is ambiguous as to, or does not address, certain aspects of determining the dividend. The policy is neither ambiguous nor does it fail to state how dividends will be determined. The contract clearly specifies that "the portion, if any, of the divisible surplus of the Company accruing upon this Policy shall be determined annually by the Board of Directors...." *Id.* In other words, the contract does not set out methods of calculation of the dividends because it specifies that dividends will be determined in the discretion of the Board of Directors.

Ford also offers three different methods of calculation of the benefits due. Ford's opinion as to the amount which could be calculated, even if it were admissible, does not support Priori's claim in this case that Prudential has breached the insurance contract. Under the uncontradicted evidence provided by Prudential, the amount tendered to Priori by Prudential includes the amount of the dividend which was determined by the Directors. The policy provides that the dividends, if any, are to be determined by the Board of Directors. *See id.* The fact that the Directors might have made a different calculation or division of surplus does not mean that they breached the insurance contract.

■ The court recognizes that Priori is contending that the amounts of the divi-

dends determined by the Board of Directors were unfair and that Prudential has been unjustly enriched. Such an argument is not based on contract language, however. Priori is not disputing that the amount of money tendered by Prudential correctly accounts for the amount of dividend distributions which were made to his mother as an insured, but has instead argued, although this argument was not pleaded as a claim in his Complaint, that Prudential has been unjustly enriched and that a jury should determine the amount of dividends which should have been paid to Priori's mother. In making such an argument, Priori points out that the beneficial ownership of surplus profits of a mutual insurance company is in the insureds.

There is no claim in the Complaint stated as a challenge to the dividends which were paid over time under the policy at issue, nor any allegation of a breach of duty by Prudential to Lena Priori as an insured. The only claim brought in the Complaint is for breach of contract based on the allegation that "the Plaintiff has disputed the Defendant's calculation of the benefit amount due." Complaint at ¶ 11.

Even assuming that a claim based on the propriety of the dividends is before this court, the amount of dividends to be paid to the insureds is within the discretion of the directors of the mutual insurance company. *See* Plaintiff's Exhibit 1, *see also* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 80:53 (3d ed. 1996) ("The question as to how much of the surplus shall be distributed to the policyholders ... must be determined by the company's officers and managers, who are to exercise their discretion in determining it...").

To proceed on his theory, assuming such a claim is properly brought in this court, Priori would have to present some evidence that the directors abused their discretion, engaged in fraud, or misused cor-

porate funds for a claim to proceed on a challenge to the dividends declared under Lena Priori's policy. *Cf. Kohn v. Birmingham Realty Co.,* 352 So.2d 834, 836 (1977) (directors of a corporation have the authority to declare a dividend and courts will only interfere in this management function if there has been fraud, abuse of discretion, or misuse of corporate funds); *Boykin v. First Alabama Bank of Birmingham,* 384 So.2d 10 (Ala.1980) (citing *Kohn* for the proposition that a court will not interfere with a corporation's dividend policy unless there has been fraud, abuse of discretion, or misappropriation of funds).

Priori has not produced evidence to create a question of fact as to whether the Board of Directors of Prudential was acting in abuse of its discretion, or otherwise outside of its authority, when it determined the amount of dividend to be declared for the policy at issue. A comparison, even if founded on admissible evidence, of the relative rates of increase of a policy value and the company's surplus does not take into account the factors a board of directors may have considered. *See Cohen v. Prudential Ins. Co. of America,* 58 N.J.Super. 37, 155 A.2d 304, 307 (N.J.Super.1959) (stating that in a mutual insurance company a dividend is a return to the policyholder of the portion of his premium which the company does not need to cover the actual cost of furnishing the insurance); *see also Couch on Insurance* at § 80:53 (the company may retain that portion of the surplus needed to insure the security of policyholders in the future as well as the present and to cover any contingencies which may arise or which may be fairly anticipated).

## V. *CONCLUSION*

As was discussed above, Priori contends that he is entitled to substantially more than the $1,048.65 tendered by Prudential as the benefit due under a whole life insur-ance policy which had a face amount of $249. The claim brought in the Complaint is for breach of contract. Priori has not disputed that Prudential correctly tendered payment of the dividends which had been paid over time to the owner of the insurance policy. Instead, Priori has attempted to recast his breach of contract claim as a challenge to the propriety of dividends declared in the discretion of the Board of Directors from 1951 until 1996. No reliable evidence has been submitted, however, which would demonstrate that the Board of Directors of Prudential abused its discretion or otherwise acted outside of its authority in determining the amount of dividends paid. The court finds, therefore, that Priori has failed to create a question of fact as to the amount due under the policy, and that Prudential is entitled to summary judgment.